# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary K Haak, | No. CV-17-03576-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Terry Dishon, et al., | |
| Defendants. | |

Plaintiff Gary Haak ("Haak") alleges that, after being hired by a company owned by Defendants Terry and Luci Dishon (the "Dishons"), the Dishons and Defendant Terry Dunken ("Dunken") fraudulently induced Haak into providing services by promising Haak he would be compensated when the company was sold. Haak further alleges he never received this compensation, nor the compensation due him under his employment agreement. Finally, Haak alleges the Dishons made misrepresentations in connection with the company's subsequent bankruptcy proceedings, and that Defendants Craig Power ("Power") and Stephen R. Smith ("Smith") provided legal services in connection with the bankruptcy. Defendants now move to dismiss Haak's claims. Regarding Defendants Power's, Smith's, and Dunken's motions, these will be granted as the Court lacks personal jurisdiction over these Defendants. The Dishons' motion will also be granted, since Haak's contract and fraud claims do not allege sufficient facts, since the fraudulent inducement claim lacks the requisite particularity. However, these deficiencies may be curable, and Haak will be granted leave to amend.

# BACKGROUND

Haak's amended complaint, (Doc. 6), alleges the following: Haak is an Arizona resident who was hired by MCI Partners ("MCI"), a Delaware limited liability company, as Vice President of Operations at some time in 2012. MCI was owned by Defendants Terry and Luci Dishon ("the Dishons"), both of whom were, at all relevant times, North Dakota residents. At the time, the Dishons also owned and operated several other companies, including Dishon Disposal, a North Dakota oil field waste disposal company.

Haak alleges he had an employment agreement with MCI, but "agreed to defer raises and provided services [for] which he was never paid." Haak does not allege how long he worked for MCI, or exactly what services he performed as Vice President of Operations, except to note that he terminated an employee at the Dishons' direction.

Haak further alleges that, later in 2012, the Dishons, both Montana residents, sold Dishon Disposal.[1] To effectuate the sale, Dishon Disposal was first merged into Waste Deep, a Nevada corporation, and then sold to another company, Digerati Technologies ("Digerati"). In connection with this sale, on November 15, 2012, the Dishons and Defendant Terry Dunken ("Dunken"), a Texas resident, allegedly instructed Haak to "sign the transfer documents for Waste Deep." Haak alleges he did so because he was told he was the only person available to sign the documents and because he was promised he would be compensated and receive stock shares following the sale.

The transfer of the companies was completed on November 26, 2012. However, following the sale, Digerati never paid the Dishons, and, in turn, the Dishons never compensated Haak. Instead, Digerati filed for bankruptcy in the Southern District of Texas. Haak alleges Defendants Stephen Smith ("Smith") and Craig Power ("Power"),[2] both Texas residents, provided representation during the bankruptcy proceedings. Haak

---

[1] Haak alleges the Dishons took this action in concert with Defendants Vess and Sheyenne Hurley (the "Hurleys"). Haak has since voluntarily dismissed the Hurleys from this suit. (Docs. 9; 12; 24).

[2] Haak's complaint mistakenly names "Craig Powers" as a defendant. Because Power's motion to dismiss clarifies that his name is Power, and not Powers, (Doc. 18), the Court will refer to him accordingly.

also alleges the Dishons made misrepresentations and omissions in connection with the bankruptcy, and fraudulently filed Waste Deep's Articles of Incorporation.

Haak filed the instant suit in December 2017, bringing three claims against the Defendants. The first is a breach of contract claim in which Haak alleges he has not been compensated for the services he provided per the employment agreement and that he has not been compensated for signing the Articles of Incorporation. Haak alleges his damages are approximately $4.3 million. In his remaining claims, Haak says he was "fraudulently induced" into signing Waste Deep's transfer documents, and that Defendants committed fraud during the bankruptcy proceeding and fraudulently filed Waste Deep's Articles of Incorporation.

Defendants now move to dismiss Haak's claims. As to Defendants Power, Smith, and Dunken, they separately move to dismiss on many grounds, including on the shared basis that this Court cannot exercise personal jurisdiction over them. (Docs. 18; 20; 34). The Dishons also move to dismiss, arguing this Court lacks subject matter jurisdiction over Haak's bankruptcy fraud claims, and that each of Haak's allegations must be dismissed because they are grounded in fraud and do not satisfy Rule 9(b)'s heightened pleading standard. (Doc. 27). Haak responded to each, (Docs. 36; 37; 40; 46), and Defendants Power, Smith, and the Dishons replied, (Docs. 38; 41; 48).

**ANALYSIS**

Defendants move to dismiss Haak's claims for a variety of reasons including lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim. (Docs. 18; 20; 27; 34). Because the issue of personal jurisdiction is dispositive as to Defendants Power, Smith, and Dunken, the analysis begins there.

**I. Personal Jurisdiction: Defendants Power, Smith, and Dunken**

Defendants Power, Smith, and Dunken move to dismiss arguing, in part, that this Court cannot exercise personal jurisdiction over them. (Docs. 18; 20; 34). To determine personal jurisdiction in a diversity case, a court first looks to the law of the state in which it sits, and then determines whether asserting jurisdiction is a violation of due process.

*Burnham v. Super. Ct. of California, County of Marin*, 495 U.S. 604 (1990). Since Arizona provides for personal jurisdiction coextensive with the limits of federal due process, *Doe v. Am. Nat. Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997), the analysis can be limited to whether asserting jurisdiction over the Defendants satisfies federal due process requirements.

Consistent with due process, a court may exercise personal jurisdiction over a defendant only if the defendant has "certain minimum contacts with the relevant forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *2 Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (defining minimum contacts as "some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws"). The plaintiff bears the burden of showing jurisdiction is appropriate. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (citing *Schwarzenegger v. Fred Martin Motor Company*, 374 F.3d 797, 800 (9th Cir. 2004)).

There are two kinds of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, whereas specific jurisdiction exists when the controversy arises from or is related to the defendant's contact with the forum state. *Id*. General jurisdiction will be addressed first.

The paradigmatic forum for the exercise of general jurisdiction over an individual is the person's domicile. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). And for a court to exercise general jurisdiction over a nonresident defendant, the plaintiff must show the defendant's purposeful contacts with the forum state are so continuous and systematic that the defendant is deemed "essentially at home" in the forum state, akin to an individual's domicile. *Daimler AG. v. Bauman*, 134 US

746, 751 (2014).

Here, Haak's complaint recognizes that Defendants Power, Smith, and Dunken are not domiciled in Arizona, but in Texas. In addition, Haak's complaint provides no facts suggesting any of these Defendants' contacts with Arizona were continuous or systematic such that an Arizona court might exercise general personal jurisdiction over them. *Helicopteros*, 466 U.S. at 417.[3] Thus, it is clear this Court lacks general jurisdiction over Defendants Power, Smith, and Dunken.

The next determination is whether these Defendants' contacts with Arizona are sufficient for this Court to exercise specific personal jurisdiction over them for the purposes of this suit. A three part test is used to determine whether a defendant's contacts are sufficient to subject the defendant to specific personal jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (citation omitted). First, the non-resident defendant must either "purposefully direct his activities" toward the forum or "purposefully avail[ ] himself of the privileges of conducting activities in the forum." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (citation omitted). Second, "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Id.* (citation omitted). And third, "the exercise of jurisdiction must comport with fair play and substantial justice," meaning "it must be reasonable." *Id.* (citation omitted). "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (citation omitted). However, "[i]f the plaintiff meets that burden, the burden then shifts to the defendant to present a compelling case that the

---

[3] Indeed, in moving to dismiss, each of Defendants Power, Smith, and Dunken attached a declaration attesting that they are not residents of Arizona, do not do business in Arizona, and have either visited the state only for personal reasons or, at to Power, have never "stepped foot in" the state at all. (Docs. 18; 20; 34). Haak's allegations do not conflict with these statements. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (explaining that, if there are conflicts between the allegations in plaintiff's complaint, statements in plaintiff's affidavits, and any statements in defendants' affidavits, these conflicts must be resolved in the plaintiff's favor); *see also CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

- 5 -

exercise of jurisdiction would not be reasonable." *Id.* at 1068-69 (citation and internal quotations omitted).

Here, Haak's complaint does not allege that Defendants Power, Smith, and Dunken directed any activities towards Arizona, does not reference any activity occurring in Arizona, and does not appear to be related to events concerning Arizona in any way. Specifically, regarding Power and Smith, Haak merely alleges they assisted with the Texas-based bankruptcy proceedings in approximately May of 2013. And in regards to Dunken, Haak merely alleges he directed Haak to sign the transfer documents for Nevada corporation Waste Deep such that North Dakota corporation Dishon Disposal could be transferred to Digerati. There is no showing that any of these events would give rise to personal jurisdiction in Arizona. Indeed, based on the complaint, it appears the only connection to Arizona is Haak's present residency in this state. This is insufficient to establish personal jurisdiction over Defendants Power, Smith, and Dunken. *See Walden v. Fiore*, 571 U.S. 277, 284, 289 (2014) (explaining that "the relationship must arise out of contacts that the defendant *himself* creates with the forum state" and that "a plaintiff's contacts with the defendant and forum" cannot "drive the jurisdictional analysis"). Thus, Defendants Power, Smith, and Dunken will be dismissed for lack of personal jurisdiction.

**II. The Dishons' Motion to Dismiss**

Since Defendants Power, Smith, and Dunken will be dismissed for lack of personal jurisdiction, the only remaining defendants are the Dishons.[4] The Dishons separately move to dismiss each of the three allegations in Haak's complaint. (Doc. 27). The Dishons argue Haak's allegations fail to state a claim because the claims, all of which are grounded in fraud, do not satisfy Rule 9(b)'s heightened pleading standard.[5] In

---

[4] Although it is not apparent that this Court can exercise personal jurisdiction over the Dishons, both of whom are North Dakota residents, a party may waive a defect in personal jurisdiction. Fed. R. Civ. P. 12(h)(1).

[5] The Dishons also argue this Court lacks subject matter jurisdiction over Haak's bankruptcy fraud claims. However, as set forth in the complaint and as clarified in Haak's response, Haak's claim is not for fraud in the bankruptcy proceeding, but for fraud as to Haak. (Docs. 6; 40). However, to the extent Haak's claim is one for fraud

exercise of jurisdiction would not be reasonable." *Id.* at 1068-69 (citation and internal quotations omitted).

Here, Haak's complaint does not allege that Defendants Power, Smith, and Dunken directed any activities towards Arizona, does not reference any activity occurring in Arizona, and does not appear to be related to events concerning Arizona in any way. Specifically, regarding Power and Smith, Haak merely alleges they assisted with the Texas-based bankruptcy proceedings in approximately May of 2013. And in regards to Dunken, Haak merely alleges he directed Haak to sign the transfer documents for Nevada corporation Waste Deep such that North Dakota corporation Dishon Disposal could be transferred to Digerati. There is no showing that any of these events would give rise to personal jurisdiction in Arizona. Indeed, based on the complaint, it appears the only connection to Arizona is Haak's present residency in this state. This is insufficient to establish personal jurisdiction over Defendants Power, Smith, and Dunken. *See Walden v. Fiore*, 571 U.S. 277, 284, 289 (2014) (explaining that "the relationship must arise out of contacts that the defendant *himself* creates with the forum state" and that "a plaintiff's contacts with the defendant and forum" cannot "drive the jurisdictional analysis"). Thus, Defendants Power, Smith, and Dunken will be dismissed for lack of personal jurisdiction.

**II. The Dishons' Motion to Dismiss**

Since Defendants Power, Smith, and Dunken will be dismissed for lack of personal jurisdiction, the only remaining defendants are the Dishons.[4] The Dishons separately move to dismiss each of the three allegations in Haak's complaint. (Doc. 27). The Dishons argue Haak's allegations fail to state a claim because the claims, all of which are grounded in fraud, do not satisfy Rule 9(b)'s heightened pleading standard.[5] In

---

[4] Although it is not apparent that this Court can exercise personal jurisdiction over the Dishons, both of whom are North Dakota residents, a party may waive a defect in personal jurisdiction. Fed. R. Civ. P. 12(h)(1).

[5] The Dishons also argue this Court lacks subject matter jurisdiction over Haak's bankruptcy fraud claims. However, as set forth in the complaint and as clarified in Haak's response, Haak's claim is not for fraud in the bankruptcy proceeding, but for fraud as to Haak. (Docs. 6; 40). However, to the extent Haak's claim is one for fraud

addition, to the extent any of Haak's claims survive the motion to dismiss, the Dishons argue Haak's allegations are overly vague and a more definitive statement of the allegations is needed before the Dishons can answer the complaint.[6]

Haak's fraud claim will be addressed first. In his amended complaint, Haak alleges the Dishons "committed acts of fraud upon the bankruptcy proceeding," made misrepresentations and material omissions in connection with it, and fraudulently filed Waste Deep's Articles of Incorporation. However, "[t]o prevail on a fraud claim under Arizona law, a claimant must show (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth, (8) the right to rely on it, and (9) his consequent and proximate injury." *Thompson v. Prop. & Cas. Ins. Co. of Hartford*, No. CV-13-02437-PHX-JAT, 2015 WL 9009964, at *11 (D. Ariz. Dec. 16, 2015) (citation omitted). Here, Haak does not claim the Dishons' misrepresentations were made to him, but to other entities such as the bankruptcy court. Thus, Haak has not alleged that the Dishons intended for Haak to rely on their alleged misrepresentations and omissions, that Haak in fact relied upon them, or that Haak had a right to rely on them. For these reasons, Haak's fraud claim will be dismissed.

Thus, Haak's two remaining claims against the Dishons are breach of contract (Count One) and fraudulent inducement (Count Two). As to these, the Dishons argue these claims must be dismissed because they are grounded in fraud but fail to meet the heightened pleading standard for fraud claims.

---

occurring in the bankruptcy proceeding, the Dishons would be correct that Haak cannot bring such a claim. *See, e.g.*, *In re Martin*, 387 B.R. 307, 314 (Bankr. S.D. Ga. 2007).

[6] The Court recognizes that, while the Dishons' motion to dismiss was pending, the Dishons subsequently answered the complaint, (Doc. 28), likely because this case is subject to the mandatory initial discovery pilot program which requires a party to answer a complaint even when a motion to dismiss is pending. Though a motion for a more definitive statement is not appropriate where an answer has already been filed, here this is irrelevant because the Court will grant the Dishons' motion to dismiss.

When bringing a fraud claim, the elements of fraud must be pled with specificity, including "the who, what, when, where, and how" of the misconduct charged so as to put the defendant on notice of the charges that must be defended against. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); Fed. R. Civ. P. 9(b). Non-fraud causes of action that are nonetheless "grounded in fraud" must also satisfy this heightened standard. *See Laguna v. Coverall N. Am., Inc.*, No. 09-CV-2131-JM (BGS), 2011 WL 13177529, at *12 (S.D. Cal. Feb. 14, 2011) (citing *Vess*, 317 F.3d at 1104–05; *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). A claim is "grounded in fraud" when it rests on a unified course of fraudulent conduct, even when fraud is not an essential element of the claim itself. *See, e.g.*, *Kearns*, 567 F.3d at 1125–26. Claims lacking the requisite factual allegations may be dismissed. *See Salameh*, 726 F.3d at 1133; *Kearns*, 567 F.3d at 1126. However, unless it is clear an amendment could not cure the claim's deficiencies, courts should dismiss with leave to amend. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008) (citation omitted).

Since Haak's fraudulent inducement claim clearly is grounded in fraud, it will be addressed first. The question is whether Haak's complaint contains the bare factual allegations representing the "the who, what, when, where, and how" of the misconduct charged. It does not. As to this claim, Haak alleges that on November 15, 2012, the Dishons "fraudulently induced [Haak] to sign the transfer documents for Waste Deep" by promising that Haak would be compensated for doing so, that Haak signed the transfer documents relying upon the Dishons' representations, and that the Dishons failed to compensate Haak for these services. However, Haak fails to allege exactly what compensation the parties agreed Haak would receive, or how it would be calculated. Thus, the Dishons' motion to dismiss will be granted as to Haak's fraudulent inducement claim.

Further, to the extent Haak's breach of contract claim is based upon this same unified course of fraudulent conduct, it, too, is grounded in fraud. More specifically, part

of Haak's breach of contract claim alleges Haak was fraudulently induced into signing Waste Deep's transfer documents on November 15, 2012, and that he did so because the Dishons agreed to "compensate[]" Haak and give him "stock shares" once the sale was completed. Haak then alleges that the Dishons breached this oral agreement because, after the sale, Haak never received the promised compensation. Since Haak alleges he was fraudulently induced into entering this agreement, it is part of a unified course of conduct grounded in fraud. *See Laguna v*, 2011 WL 13177529, at *13 ("Because Plaintiffs have alleged a unified course of conduct on the part of Defendants that meets all the requirements of fraud, Plaintiffs' breach of contract [ . . . ] claims can be said to be 'grounded in fraud.'").[7] That said, Haak does not allege any details regarding the agreement, such as how much compensation and stock shares the parties agreed Haak would receive or how any payment would be calculated. Thus, Haak has failed to allege sufficient facts to support this part of his breach of contract claim, and it will be dismissed.

Finally, as to the remainder of Haak's breach of contract claim, it does not appear to be grounded in fraud. That is because, as to the remainder of his breach of contract claim, Haak alleges that he agreed to work for MCI and provide services, for which the Dishons agreed to compensate him at a later basis. Thus, this breach of contract claim need not meet the heightened pleading standard set forth above.

That said, even though this portion of the breach of contract claim is not grounded

---

[7] Here, the Court notes that a person can claim they were both fraudulently induced into entering into a contract, and that the same contract was breached, but can only prevail on one cause of action. "[F]or example, a person claiming fraudulent inducement in the creation of a contract must elect between affirming the contract and suing for damages, or repudiating the contract and seeking equitable rescission; a person cannot pursue the remedy of rescission by repudiating the contract while at the same time affirming the contract in an effort to obtain contractual damages." *Buell v. Mueller*, No. 1 CA-CV 12-0146, 2013 WL 267741, at *3 (Ariz. Ct. App. Jan. 24, 2013); *see also Morris v. Achen Const. Co.*, 747 P.2d 1211, 1213 (Ariz. 1987). Thus, for now, Haak may pursue a claim for fraudulent inducement as well as breach of contract, but later must elect one or the other.

in fraud, under Arizona law, a plaintiff bringing an action for breach of contract still "has the burden of proving the existence of the contract, its breach[,] and the resulting damages." *See generally In re Arizona Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1056 (D. Ariz. 2018) (citation omitted). And in doing so, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Haak has not.

Specifically, regarding Haak's employment agreement, Haak alleges he was hired by the Dishons in 2012, that he had an employment agreement, that he provided services pursuant to this agreement, including firing one employee. Haak further alleges that he agreed to defer compensation for these services, but never received payment. However, Haak does not allege what the contract's terms were, or include any factual content supporting his allegations, such as the rate of payment or when compensation was due. Without these factual allegations, Haak's claims are nothing more than conclusory assertions. Thus, Haak's allegations are insufficient to state a claim. *See, e.g.*, *Repwest Ins. Co. v. Praetorian Ins. Co.*, 890 F. Supp. 2d 1168, 1183 (D. Ariz. 2012) (dismissing plaintiff's breach of contract claim because "[p]laintiff must allege the existence of a contract, the terms of the contract that [d]efendant has breached, and the damages suffered from that breach," and plaintiff did "not ma[k]e these allegations with any detail, but rather makes conclusory assertions that [defendant] breached a contract it had with [p]laintiff").

Accordingly,

**IT IS ORDERED** Defendant Power's Motion to Dismiss, (Doc. 18), is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant Smith's Motion to Dismiss, (Doc. 20), is **GRANTED**.

**IT IS FURTHER ORDERED** Defendant Dunken's Motion to Dismiss, (Doc. 34), is **GRANTED**.

**IT IS FURTHER ORDERED** Defendants Terry and Luci Dishons' Motion to Dismiss, (Doc. 27), is **GRANTED**.

**IT IS FURTHER ORDERED** should Plaintiff choose to amend his complaint, Plaintiff shall file such an amended complaint no later than **October 15, 2018**.

Dated this 24th day of September, 2018.

Honorable Roslyn O. Silver
Senior United States District Judge